**Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000802
21-SEP-2015
08:12 AM**

NO. CAAP-14-0000802

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
SAMUEL C. McFADDEN, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CR. NO. 13-1-0357)

MEMORANDUM OPINION
(By:  Foley, Presiding Judge, Leonard and Reifurth, JJ.)

After a jury trial, Defendant-Appellant Samuel C.
McFadden (**McFadden**) was found guilty of Sexual Assault in the
Second Degree, in violation of Hawaii Revised Statutes (**HRS**)
§ 707-731(1)(a) (2014), and sentenced to a term of five years
probation including fifteen months in jail with credit for time
served.  McFadden appeals from the April 3, 2014 Judgment, Guilty
Conviction and Probation Sentence (**Judgment**) entered by the
Circuit Court of the Fifth Circuit (**Circuit Court**).[1]

I.    BACKGROUND FACTS

On August 20, 2013, Plaintiff-Appellee the State of
Hawai'i (**State**) charged McFadden with one count of Sexual Assault
in the Second Degree in violation of  HRS § 707-731(1)(a).  The
jury trial began on November 18, 2013 with McFadden being
represented by a Deputy Public Defender.

---

[1]     The Honorable Randal Valenciano presided.

The Complainant testified during trial. She stated that she had come to Kaua'i from Oregon in August of 2013 and ended up camping at Anini Beach with her friend Sasha and Sasha's children. She met McFadden as he was also camping nearby. McFadden talked to her about the "energy healing" services or "Reiki" that he performed, which Sasha thought could help Complainant. Complainant eventually agreed to cut McFadden's hair in exchange for his Reiki services. She went to McFadden's tent, where he had a blowup mattress to lie down on. Complainant lay down on the mattress on her back and McFadden began to give her what she described as a massage. At this time, Complainant was wearing her bikini, as she had been tanning outside. McFadden asked her to remove her bikini top because "sometimes it can constrict your chest from expanding[.]"

At some point, Complainant needed to take a break to use the bathroom. When she got back, McFadden asked her to lie down on her stomach. She stated that McFadden began to massage her neck and back. McFadden told her that she could touch him if she wanted to, but Complainant did not want to. McFadden had one hand near her neck and upper back and one hand near her hips and buttocks. McFadden then began touching Complainant under her bikini in the area in between her anus and vagina. Complainant testified that she was confused, but McFadden told her to relax. Complainant testified that she was not relaxed, that it was apparent that she was not relaxed, and that she was not okay with him putting his hands in that area. However, she did not tell him not to touch her there or to stop. Complainant then realized that McFadden had put his fingers inside of her anus. At that point, she pushed up and said "I don't like this. I'm done. I want to leave. I don't like to be touched," before grabbing her belongings and leaving. McFadden did not say anything. Complainant testified that McFadden had never asked her if it was okay for him to touch her private area or put his finger inside her anus. She estimated that the time he was touching her in between her anus and vagina and the time he was touching the inside of her anus was less than a minute total.

Complainant told her friends what happened later that day and they called the police. She described being upset, confused, and embarrassed and cried when she told her friend Sasha what had happened.

McFadden also testified at trial. He stated that when Complainant came into his tent, he told her "I would be addressing all of her organs, including her sexual organs, and if she was okay with that." When Complainant returned to the tent after her bathroom break, he told her "imagine yourself being able to levitate, and if I could grab your pubic bone and tailbone and shake your whole skeletal so as to relieve the tension. This is what I'm going to be doing[.]" He stated that he did massage the area between Complainant's anus and vagina and penetrated her anus. Specifically, he put the middle finger of his right hand into her anus. He stated that:

> I was explaining to her, oh, your perineum has a knot there too.
> And I started working it. . . . And then the knot in the perineum released, and I said "Do you notice any difference?"
> And she goes, "Yeah, I could feel the energy releasing there."
> And I said, "Let me know if you feel anything else."
> And after a little bit of time, she goes "Yeah, I can feel my abdominal, something going on there."
> So I had finished both of her arms all the way down to her hands with the other arm, and I was up in her shoulders, and at least ten times I kept on saying, because I could feel she was getting in touch with something deep within her, but she wasn't coming out with words.
> And I said, you know, this is the time to speak. This is really, you know - this is the time to say anything because somebody now is listening.
> And so I - at least ten times I encouraged her to speak, speak, speak. And then finally, she said, "I don't want to be touched, and I withdraw myself."
> And I said, "Okay. What would you like to do?"
> And then she says, "I think I want to go out and have a cigarette."
> And I said, "Okay." And she went out and I got cleaned up, and then I went outside[.]

McFadden said that Complainant let him take a drag of the cigarette she was smoking, that she told him "I think I'm done now[,]" and then got her things out of his tent.

The Circuit Court's instructions to the jury contained the following:

> In the Complaint, the Defendant, SAMUEL C. McFADDEN, is charged with the offense of Sexual Assault in the Second Degree.
>
> A person commits the offense of Sexual Assault in the Second Degree if he knowingly subjects another person to an act of sexual penetration by compulsion.
>
> There are three material elements of the offense of Sexual Assault in the Second Degree, each of which the prosecution must prove beyond a reasonable doubt.
>
> These three elements are:
>
> 1. That, on or about the 17th day of August, 2013, in the County of Kauai, State of Hawaii, the Defendant, SAMUEL C. McFADDEN subjected another person to an act of sexual penetration; and
>
> 2. That the Defendant SAMUEL C. McFADDEN did so by compulsion; and
>
> 3. That the Defendant SAMUEL C. McFADDEN did so knowingly.

This instruction was submitted as the State's Instruction No. 1 which had been given over McFadden's counsel's objection.[2]

The court also gave the following instruction: "'Compulsion' means absence of consent." This instruction was submitted as the State's Instruction No. 4 which was not objected to. The court also instructed that: "Consent signifies voluntary agreement or concurrence." This had been submitted as the Court's Supplemental Jury Instruction No. 1. McFadden's counsel objected to this instruction as it was "vague" and "not complete" and entered at the last minute.

The jury found McFadden guilty of Sexual Assault in the Second Degree. The court entered its Judgment on April 3, 2014. McFadden was sentenced to five years of probation with fifteen months in jail, was ordered to pay a $205 Crime Victim Compensation Fee and a $150 Probation Services Fee, was ordered

---

[2]     Counsel's objection was specifically:

Under where it says these three elements are, colon, I object to the way this is laid out. Basically, I think knowingly should go along with the sentence that has compulsion in it. And knowingly should also go along with the sentence or with the clause, rather, that it is subjected another person to an act of sexual penetration so that that's clear.

And I disagree that the state of mind knowingly applies to the date or to the County of Kauai, State of Hawaii.

to attend and complete the HOPE Probation Program, and was ordered to register as a sex offender.

McFadden timely filed a notice of appeal on May 5, 2014.

II. POINTS OF ERROR

McFadden raises the following points of error on appeal:

(1) The Circuit Court erred when it failed to give a jury instruction on the defense of consent or implied consent;

(2) The Circuit Court erred when it failed to give a jury instruction on the defense of ignorance or mistake; and

(3) McFadden was denied effective assistance of counsel at trial.

III. APPLICABLE STANDARD OF REVIEW

The standard of review for jury instructions that were not objected to at trial was clarified in State v. Nichols, 111 Hawai'i 327, 141 P.3d 974 (2006), where the Hawai'i Supreme Court held that

> although as a general matter forfeited assignments of error are to be reviewed under [Hawai'i Rules of Penal Procedure (HRPP)] Rule 52(b) plain error standard of review, in the case of erroneous jury instructions, that standard of review is effectively merged with the HRPP Rule 52(a) harmless error standard of review because it is the duty of the trial court to properly instruct the jury. As a result, once instructional error is demonstrated, we will vacate, without regard to whether timely objection was made, if there is a reasonable possibility that the error contributed to the defendant's conviction, i.e., that the erroneous jury instruction was not harmless beyond a reasonable doubt.

Id. at 337, 141 P.3d at 984 (footnote omitted). Thus, the appellant must first demonstrate instructional error by rebutting the "presumption that unobjected-to jury instructions are correct." Id. at 337 n.6, 141 P.3d at 984 n.6; accord State v. Eberly, 107 Hawai'i 239, 250, 112 P.3d 725, 736 (2005). If the appellant is able to rebut this presumption, the burden shifts to the State to prove that the error was harmless beyond a reasonable doubt because

> [e]rroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial. However, error is not to be viewed in isolation and

5

> considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled.

Nichols, 111 Hawai'i at 334, 141 P.3d at 981 (brackets in original omitted) (quoting State v. Gonsalves, 108 Hawai'i 289, 293, 119 P.3d 597, 601 (2005)).

In State v. Taylor, 130 Hawai'i 196, 197-98, 307 P.3d 1142, 1143-44 (2013), the Hawai'i Supreme Court clarified Nichols and held that, in the case of an unrequested mistake of fact jury instruction, the alleged error is to be reviewed first for plain error, i.e., "whether the defendant, at trial, had met his or her initial burden to adduce credible evidence of facts constituting the defense (unless those facts are supplied by the prosecution's witnesses)." Then, "[i]f the omission of the unrequested mistake of fact jury instruction constitutes plain error, it shall be a basis for reversal of the defendant's conviction only if an examination of the record as a whole reveals that the error was not harmless beyond a reasonable doubt." Id. at 198, 307 P.3d at 1144. The Taylor court clarified that "[t]his is so, because a defense like mistake of fact is capable of negativing the state of mind required to establish an element of the offense, thus capable of avoiding conviction." Id. at 207, 307 P.3d at 1153 (citation, internal quotation marks, and footnote omitted).

IV. DISCUSSION

A. Instruction on the Defense of Implied Consent

McFadden argues that the Circuit Court erred by failing to instruct the jury on the defenses of consent and implied consent. By statute, "[i]n any prosecution, the victim's consent to the conduct alleged, or to the result thereof, is a defense if the consent negatives an element of the offense or precludes the infliction of the harm or evil sought to be prevented by the law defining the offense." HRS § 702-233 (2014). Further, the offense of sexual assault in the second degree requires compulsion, which can either be manifested as a lack of consent or a threat. "A person commits the offense of sexual assault in the second degree if: (a) The person knowingly subjects another

person to an act of sexual penetration by compulsion[.]" HRS § 707-731(1)(a). "'Compulsion' means absence of consent, or a threat, express or implied, that places a person in fear of public humiliation, property damage, or financial loss." HRS § 707-700 (2014). Further, "[c]onsent signifies voluntary agreement or concurrence . . . . Consent may be expressed or implied[.]" State v. Adams, 10 Haw. App. 593, 605, 880 P.2d 226, 234 (1994), cert. denied, 77 Hawaiʻi 373, 884 P.2d 1149 (1994).

As discussed, the supreme court recently clarified the two-step process to be used when evaluating a trial court's failure to instruct on the mistake of fact defense. Taylor, 130 Hawaiʻi at 207-08, 307 P.3d at 1153-54. Inasmuch as the defense of consent, like the defense of mistake of fact, negates the state of mind necessary for conviction, we conclude that Taylor's two-part test for whether reversal is required when a trial court fails to give an unrequested mistake of fact jury instruction is also applicable to a case where the trial court fails to give an unrequested consent instruction. See id. ("Failure to give the mistake of fact jury instruction [when credible evidence constituting the defense is put forth at trial] constitutes plain error . . . because a defense like mistake of fact is capable of negativing the state of mind required to establish an element of the offense, thus capable of avoiding conviction.") (citations, internal quotation marks, brackets, and footnote omitted).

In the present case, the jury instructions specifically provided that: (1) sexual assault in the second degree requires sexual penetration by compulsion; (2) "compulsion" means the absence of consent; and (3) consent signifies voluntary agreement or concurrence. However, there was no instruction that consent could either be expressed or implied.

This court has previously held that "[i]f there is any rational basis in the evidence which would support a finding of implied concurrence in the charged act(s), the jury should be instructed that consent may be expressed or implied." State v.

Jones, 97 Hawai'i 23, 31, 32 P.3d 1097, 1105 (App. 1998).[3] Here, there is credible evidence in the record to support a finding of implied consent. On direct examination, McFadden testified that he told Complainant he "would be addressing all of her organs, including her sexual organs, and if she was okay with that." McFadden was asked: "Did you tell her that you would be working inside her sexual organs?" McFadden replied: "That would be depending upon if it called for it. But I was letting her know ahead of time that it would be involved." McFadden also testified that as he was massaging the area between Complainant's anus and vagina he told her that he felt a "knot of energy" in her perineum, that he felt it "release," that he asked her if she noticed any difference and she replied: "Yeah, I could feel the energy releasing there", that he then told her to let him know if she felt anything else, and that "after a little bit of time" she told him "I can feel my abdominal, something going on there."

This testimony could be viewed by a rational juror as evidence that Complainant impliedly consented to McFadden touching her private areas and putting his finger in her anus as part of his "energy healing" practice. Thus, McFadden was entitled to an instruction explaining that consent, as a defense to sexual assault in the second degree, could be either expressed or implied. Jones, 97 Hawai'i at 31, 32 P.3d at 1105; see also State v. Ancheta, 108 Hawai'i 467, 468-69, 121 P.3d 932, 933-34 (App. 2005) (vacating and remanding judgment as to certain sexual assault convictions where the defendant contended that the sex was impliedly consented to as "make up sex" but the jury instructions did not mention implied consent at all); State v.

---

[3]    The State argues that Jones does not support McFadden's position because in Jones, the Intermediate Court of Appeals (ICA) vacated and remanded the case on other grounds. 97 Hawai'i at 31, 32 P.3d at 1105. However, the ICA in Jones was clearly instructing the trial court that on remand, a jury instruction on implied consent should be added if it found that there was a reasonable basis to support such an instruction. Id. Further, this court has relied on the proposition in Jones, cited above, to vacate and remand a case where an implied consent instruction was not given despite the existence of a rational basis for such a defense in the evidence. State v. Ancheta, 108 Hawai'i 467, 469, 121 P.3d 932, 934 (2005). Thus, we disagree with the State's argument that Jones does not support the argument that the Circuit Court erred when not providing an instruction on implied consent.

Shabazz, 98 Hawaiʻi 358, 385, 48 P.3d 605, 632 (App. 2002) ("we agree with [the defendant] that a jury instruction defining both express and implied consent would be particularly appropriate on the record of this trial, in which the only real question before the jury was whether Complainant consented to the sexual acts, either expressly or impliedly").

The State argues that the error was harmless because no reasonable juror would believe that Complainant implicitly gave her consent. However, the supreme court has previously stated that:

> Though the evidence might appear to the trial court to be simply overwhelming on an issue, so long as there was some evidence relevant to the issue, the credibility and force of such evidence must be for the jury, and cannot be a matter of law for the decision of the court. And we are obliged to construe the evidence in the case in a light most favorable to the appellant in determining whether or not the instruction should have been given.

State v. Lira, 70 Haw. 23, 30, 759 P.2d 869, 873 (1988) (citations, internal quotation marks, brackets, and ellipsis omitted). We reject the State's argument that no reasonable juror could find that Complainant implicitly gave her consent. Although the record in this case supports a finding that Complainant did not consent (e.g., inserting one's finger into another person's anus during a massage is more than extremely unusual, McFadden's statement about touching Complainant's sex organs did not necessarily imply that he would be touching the inside of her body, and the Complainant's testimony that she was not okay with the touching of her private areas). However, a jury would also be entitled to believe McFadden's testimony that he spoke with Complainant as he was touching the area near her anus and that he received feedback. This could reasonably be taken as evidence that Complainant was aware of how McFadden was touching her and impliedly consented by giving him positive feedback. This construction of the evidence is arguably supported by both McFadden's and Complainant's testimony that he stopped once she told him she no longer wanted to be touched.

In a similar case, where the defendant admitted to vaginally penetrating the complainant with his finger during a

massage while the complainant was undressed, this court recognized that the absence of physical or verbal resistance on the part of the complainant "may be considered by the jury in determining whether the alleged victim impliedly consented." Adams, 10 Haw. App. at 607, 880 P.2d at 235. Thus, we cannot say that the failure to instruct the jury regarding implied consent was harmless beyond a reasonable doubt. See Nichols, 111 Hawai'i at 340, 141 P.3d at 987 ("[W]e are unwilling to speculate as to what the jury would have done had it been given a proper 'relevant attributes' instruction. . . . Based upon our review of the record as a whole, we thus conclude that there is a reasonable possibility that the jury might have weighed the evidence differently had it been properly instructed."). Therefore, we must vacate the Circuit Court's Judgment against McFadden and remand for a new trial. Id. at 337, 141 P.3d at 984 ("[O]nce instructional error is demonstrated, we will vacate, without regard to whether timely objection was made, if there is a reasonable possibility that the error contributed to the defendant's conviction, i.e., that the erroneous jury instruction was not harmless beyond a reasonable doubt.") (footnote omitted).

B.      Instruction on the Defenses of Ignorance and Mistake

HRS § 702-218 (2014) provides:

> In any prosecution for an offense, it is a defense that the accused engaged in the prohibited conduct under ignorance or mistake of fact if:
> (1) The ignorance or mistake negatives the state of mind required to establish an element of the offense; or
> (2) The law defining the offense or a law related thereto provides that the state of mind established by such ignorance or mistake constitutes a defense.

In a prosecution for sexual assault in the second degree, ignorance or mistake as to the victim's lack of consent is a defense as it negatives the state of mind of awareness of the lack of consent. Adams, 10 Haw. App. at 605-07, 880 P.2d at 234-35.

In the present case, the jury instructions did not address the defense of ignorance or mistake. The instructions did, however, make clear that a conviction of sexual assault in the second degree required that the jury find that McFadden

10

*knowingly* subjected Complainant to an act of sexual penetration by compulsion. Nevertheless, the supreme court has held that, even where a jury is instructed on the state of mind necessary to convict a defendant, an instruction on the defenses of ignorance and mistake is still required.

> The Hawai'i legislature premised the enactment of HRS § 702-218 on the proposition that, "if a person is ignorant or mistaken as to a matter of fact . . . , the person's ignorance or mistake will, in appropriate circumstances, prevent the person from having the requisite culpability with respect to the fact . . . as it actually exists. . . ." See Commentary to HRS § 702-218 (1993). Consequently, the legislature intended that a jury consider, separate and apart from the substantive elements, whether a defendant's mistaken belief should negate the requisite culpability for the charged offense. That being the case, insofar as ignorance or mistake of fact is a statutory defense in Hawai'i, we deem the reasoning of the jurisdictions entitling the defendant to a separate instruction to be the more compelling and, thus, now hold that, where a defendant has adduced evidence at trial supporting an instruction on the statutory defense of ignorance or mistake of fact, the trial court must, at the defendant's request, separately instruct as to the defense, notwithstanding that the trial court has also instructed regarding the state of mind requisite to the charged offense. We believe that to hold otherwise would render HRS § 702-218(1) nugatory.
>
> Inasmuch as the jury was not given the opportunity expressly and separately to consider [the defendant's] defense of ignorance or mistake of fact at trial, "there is a reasonable possibility that [the circuit court's] error may have contributed to [the defendant's] conviction." See Hironaka, 99 Hawai'i at 204, 53 P.3d at 812 (quoting Valentine, 93 Hawai'i at 203, 998 P.2d at 483). Thus, the ICA's opinion gravely erred in holding that the circuit court's error was harmless beyond a reasonable doubt.

State v. Locquiao, 100 Hawai'i 195, 208, 58 P.3d 1242, 1255 (2002). As noted above, the supreme court has recently held that:

> [Hawai'i appellate courts] may notice as plain error the omission of a mistake of fact jury instruction if it appears that the defendant has come forward with credible evidence going to the defense that the jury should have been able to consider, as such an error "seriously affects the fairness, integrity, or public reputation of judicial proceedings," and it would "serve the ends of justice" and "prevent the denial of fundamental rights" to address such an omission. In such an instance, where the omission of the mistake of fact jury instruction constitutes plain error, it shall be a basis for reversal of the defendant's conviction only if an examination of the record as a whole reveals that the error was not harmless beyond a reasonable doubt.

Taylor, 130 Hawai'i at 207-08, 307 P.3d at 1153-54 (citation and footnote omitted).

In the present case, there was credible evidence to reasonably support the defense of ignorance or mistake as to Complainant's lack of consent. McFadden testified that he communicated with Complainant as he was touching near her anal area and that she gave him feedback as he was doing so. Complainant's failure to initially object to McFadden touching her anal area could be construed by reasonable jurors to have caused McFadden to reasonably believe that he had her consent. See Adams, 10 Haw. App. at 607-08, 880 P.2d at 235. The fact that they both testified that McFadden stopped once she told him she no longer wanted to be touched could also be construed as evidence that until she told him to stop, McFadden believed he had her consent to continue.

The State points to the weakness in McFadden's evidence regarding mistake or ignorance, and the strength of the evidence against him, to argue that the absence of an instruction on mistake or ignorance was harmless beyond a reasonable doubt. However, we reject the State's argument that there was no evidence that McFadden reasonably believed that he had Complainant's consent. As there is a reasonable possibility that the jury may have weighed the evidence differently had it been properly instructed on ignorance and mistake as a defense to sexual assault in the second degree, we cannot hold that the Circuit Court's failure to provide such an instruction was harmless beyond a reasonable doubt. Taylor, 130 Hawaiʻi at 208, 307 P.3d at 1154.

C.    Ineffective Assistance of Counsel

As we are vacating McFadden's conviction based on the Circuit Court's failure to instruct on the defenses of implied consent and ignorance or mistake, there is no need to address the ineffective assistance of counsel argument, which is grounded in counsel's failure to request such instructions. See State v. Yue, No. 29141, 2010 WL 3705983 at *1 (Sept. 23, 2010) (declining to reach the issue of whether the defendant's trial counsel was ineffective in failing to request a jury instruction on the protection of property defense where the ICA decided to vacate

and remand based on the court's failure to *sua sponte* give the jury instruction at issue).

V.    CONCLUSION

For the foregoing reasons, we vacate the Circuit Court's April 3, 2014 Judgment and remand for a new trial.

DATED: Honolulu, Hawai'i, September 21, 2015.

On the briefs:

Donna E. Richards
Mark R. Zenger
(Richards & Zenger)
for Defendant-Appellant

Tracy Murakami
Deputy Prosecuting Attorney
County of Kauai
for Plaintiff-Appellee

Presiding Judge

Associate Judge

Associate Judge